## KINGEN *v.* THE STATE.

CRIMINAL LAW.—*Evidence.*—*Husband and Wife.*—Where a husband and wife are indicted for murder, the declarations of the husband are not admissible in evidence against the wife.

From the Hancock Circuit Court.

*H. J. Dunbar, J. A. New,* and *D. S. Gooding,* for appellant.

*C. A. Buskirk,* Attorney General, for the State.

BIDDLE, C. J.—Indictment against Harrison Kingen and the appellant for the murder of Samuel Derry. The appellant pleaded not guilty, was tried by a jury, and convicted of manslaughter.

A *venire de novo* was moved for, and properly denied.

A motion for a new trial was then made, overruled, exception taken, judgment on the verdict, and appeal to this court.

Twenty-nine causes were assigned below for a new trial, and four errors are assigned here, all of which come within the single question, did the court err in overruling the motion for a new trial?

The evidence is very voluminous, and much of it collateral to the main question. It is impracticable to set it out at length in this opinion, but the main facts may be fairly stated as follows:

The appellant was the wife of Harrison Kingen, and the sister of the deceased. The two families lived on the south side of a public highway, about one-quarter of a mile apart. Their premises joined; Kingen's farm lay on the west, and Derry's on the east. The rencounter, during which Derry was mortally stabbed, occurred on the 26th day of July, 1873, in the highway, a few yards east of Derry's house. Before that time, a difficulty had existed between the families about some turkeys belonging to Derry, which had strayed over on the premises of Kingen and become mixed with Kingen's turkeys. When Derry reclaimed his turkeys, the Kingens thought that he had taken more than his share, including some of theirs. There was also a difficulty about a gosling belonging to the appellant, which had strayed over to Derry's premises with his goslings, and was carried back by the appellant. And there appears to have been some ill feeling between the appellant and the deceased about something, as was alleged, that he had said concerning her character and about a church trial, the character and merits of which do not appear. On the evening of the fatal occurrence, the appellant and her husband were going along the highway, eastward, by Derry's house, toward the residence of Mrs. Bussell, who lived some half a mile east and north of Derry's, and who was the sister of the appellant. Just as they passed Derry's gate, some one from the house spoke, "There they go, now; I wonder if they are hunting goslings?" and one of Derry's children, little Jimmy, went out and asked his aunt, the appellant, if she was hunting goslings? to which she replied, "I am not raising turkeys this year." On hearing this controversy, Derry came out into

the road, in a somewhat angry mood, saying, " I will settle it with Harrison," and calling to the Kingens, who had started on their way, to come back, that he wanted to see them. As Derry went out of his gate, he picked up a couple of brick-bats. Harrison Kingen replied, " Sam, I do not want any difficulty with you ; if my wife has done anything wrong, sue her, and I will answer the consequences." Derry appears to have still pressed upon Harrison Kingen, saying, " Let me have one clip at him ; I will settle him ; give me one clip at him ; that is all I want." The appellant got between the men, saying that her husband was sick, and not able to fight. But Derry got around her, and, as she testified, struck him on the cheek with a brick-bat. It appears that, about this time, the appellant said, " Go for him, Harrison ; don't let him run over you." The men, as she further testifies, then struggled and got down into the gutter at the side of the road, Harrison below and Derry on the top of him, lying pretty close together, breast to breast, with Harrison's left arm around Derry, and his right arm free, still struggling. Soon Derry got up, cry-ing, " Oh, I am killed ; now I am killed, I believe," which he repeated several times. Harrison Kingen arose, seeming to be somewhat confused and stupefied. The parties then sep-arated, Derry returned to his house, and the Kingens went on their way. Soon after the collision, Harrison Kingen had a pocket knife in his hand. On being asked by the appellant, if he had used a knife, he said, " I tried to." Several wounds were found about the neck and shoulder of Derry, but none of them necessarily mortal. The fatal stab was in his side, between the ninth and tenth ribs, penetrating to the depth of four inches, entering the cavity of the body, through a portion of the lung and diaphragm, into the spleen. He died the third day after the injury was received.

There is some controversy in the evidence about the size of the knife necessary to have made the wounds, and whether all were made with the same instrument; and about the knife belonging to Harrison Kingen ; and about another knife found in the house of appellant ; and from what direction the stabs

must have been received; the position of the body at the time, etc.; but as to the method of the killing there is but little dispute. Several witnesses testified to threats having been made at different times, before the fatal occurrence, by the appellant against the deceased, that she would "kill Sam Derry; that she could not rest till Sam was dead," and in similar phrases. Her feeling against her brother seemed to arise out of what he had said, or was supposed to have said, about her character, somehow coupled with the church trial, but what it was the evidence does not disclose. She was also angry at him, and a good deal disturbed about the turkey and gosling dispute. There was also evidence showing that a bad state of feeling had existed between the families of Kingen and Derry for some months, perhaps a year or more, before the fatal occurrence took place.

The State contended, from the size of the knife found upon Harrison Kingen, as shown by the evidence, and the depth and width of the wounds upon Derry, especially the fatal one in the side, that they could not have been inflicted by his knife; and, from the evidence touching another and larger knife, which, it is claimed, had been in the control of the appellant, that she must have inflicted the wounds upon Derry, especially the deeper and mortal one in his side, while the men were down and struggling, and Derry upon the top of Harrison Kingen.

The defence contends that the appellant had nothing to do with the fatal rencounter, except that she was present at the time, and that if she did aid, abet, encourage, or approve the acts of Harrison Kingen, her husband, in his difficulty with Derry, the law excuses her therefor, on account of her marital relation to her co-defendant in the indictment.

During the trial, the State asked a witness, Henry Bussell, what conversation he had with Harrison Kingen about a knife, which took place some half hour after the rencounter. The appellant objected, but the court overruled the objection, and allowed the evidence to go to the jury. The answer of the witness was:

Kingen v. The State.

"Harrison Kingen got up and walked across the floor, took out his knife and opened it, saying, ' There is no blood on my knife,' and he shut it up and put it in his pocket."

At common law, husband and wife could not be witnesses either for or against one another, nor for or against any other person indicted and tried jointly with the husband or wife for a joint offence. *Corse* v. *Patterson*, 6 Har. & J. 153; *Lucas* v. *The State*, 23 Conn. 18; *Rex* v. *Hood*, 2 Moody, 281; *Rex* v. *Smith*, 2 Moody, 289; *Commonwealth* v. *Robinson*, 1 Gray, 555.

Our code enacts, that "husband and wife are incompetent witnesses for or against each other, and they cannot disclose any communication from one to the other, made during the existence of the marriage relation, whether called as a witness while that relation exists or afterwards." 2 G. & H. 170, sec. 240. And we have numerous decisions sustaining this section. *McVey* v. *Blair*, 7 Ind. 590; *Weikel* v. *Probasco*, 7 Ind. 690; *Woolley* v. *Turner*, 13 Ind. 253; *Harris* v. *Rupel*, 14 Ind. 209; *Morse* v. *Morse*, 25 Ind. 156; *Kyle* v. *Frost*, 29 Ind. 382; *Newhouse* v. *Miller*, 35 Ind. 463; *Taulman* v. *The State*, 37 Ind. 353; *Bonham* v. *Keen*, 40 Ind. 197; *Stanley* v. *Schultz*, 47 Ind. 217.

If a husband cannot testify against his wife as a witness, much stronger are the reasons why his statements without oath should not be received as evidence against her. We think that the evidence was material, and that the court erred in allowing it to go to the jury.

The judgment is reversed; the cause remanded, with directions to sustain the motion for a new trial, and for further proceedings. The clerk will issue the proper order for the return of the prisoner.